IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 1:18-CR-392-AT-2 |
| AMOS CHRISTOLIN, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

# ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 165), recommending the denial of Defendant's Motions to Suppress Statements (Docs. 54, 84, 146) that were effectively consolidated in the final Motion. Mr. Christolin has filed objections to the Magistrate Judge's R&R. (Doc. 169.)

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's R&R for clear error if no objections are filed to the report. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must review *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b). As Defendant has filed timely objections to the central findings reached in the R&R, the Court reviews the R&R and motions to suppress on a *de novo* basis.

The Magistrate Judge's R&R in this case correctly summarized the law applicable to the analysis of the evidentiary record and legal issues posed by the Defendant's motions to suppress. The central issues in dispute remain whether the Magistrate Judge correctly found that Mr. Christolin waived his rights under *Miranda* and that he voluntarily agreed to be interviewed by Government law enforcement officers relating to the offense conduct at issue. After a careful review of Mr. Christolin's motions to suppress, his objections, and the relevant evidentiary record,[1] the Court concludes that it agrees with the R&R findings that the Government did not violate Defendant's procedural rights under the Fifth Amendment pursuant to *Miranda v. Arizona*, 384 U.S. 436, 475 (1966) and that the statement given to the Government was given on an otherwise voluntary basis. *See Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *Colorado v. Connelly*, 479 U.S. 156, 168 (1986). While the Court reaches this conclusion and adopts the R&R, it notes from the onset that this was a somewhat close question because of the way in which the officers handled the *Miranda* warning process during the interview and the related Haitian Creole and English language issues that arose in the context of the agents' interview of Mr. Christolin, whose primary native language is Haitian Creole.

---

[1] The Court listened to the audio recording of the agents' relatively lengthy interview with Defendant as well as simultaneously tracked the translation provided and language contained in the written transcript provided of the interview. The Court also considered the testimony of Defendant's expert witness, Professor Andre, regarding deficiencies in S/A Philippe's translation of English to Haitian Creole and the undisputed fact that Philippe himself was not a native speaker of Haitian Creole, but was raised by parents from the island who spoke the language. Philippe has passed a Government Haitian Creole language proficiency test.

The centerpiece of the dispute is the Magistrate Judge's finding that Mr. Christolin knowingly and voluntarily waived his *Miranda* rights during an exchange with Special Agent (S/A) Philippe. As translated, the following exchange ensued after S/A Philippe had endeavored to explain in Haitian Creole the *Miranda* rights that Christolin could assert:

> **S/A Philippe:**
> .... Now, I will ask you if you wish to speak with us?  We'll explain to you    what's going on.  You can give us, give us back your response.
>
> **Christolin:**
> All right!
>
> **S/A Philippe**
> So, are you willing to speak with us?
>
> **Christolin:**
> No, I'm willing to listen!
>
> **S/A Philippe:**
> No, I am asking if you want to speak with us.  You will need to sign -- if you're willing to speak with us, you will sign here, to state that you are willing to speak with us.  Um, and then, I will sign, um, another person will   sign. And then, like I said, you can begin to speak with us, anytime you can stop speaking with us, if you want to.
>
> **Christolin:**
> Yeah, OK.
>
> **S/A Philippe:**
> So, are you willing to speak with us?
>
> **Christolin:**
> Yeah.
>
> **S/A Philippe:**
> All right.  Sign here.  This says you are willing to speak with us.

(Interview Tr., Doc. 84-1 at 4-11.)

The audio recording containing this verbal exchange reflects no substantive pauses in the verbal exchange. Defendant contends that S/A Philippe[2] essentially ignored and ran over Mr. Christolin's effort to decline to make a statement to the police — when Christolin declined to speak but said he was "willing to listen" — and instead moved rapidly to obtain his consent by dint of asking him to sign off on the consent form. Defense counsel maintains that once Mr. Christolin responded "No" — that he did not want to speak with law enforcement — "the interrogation should have ended immediately after this response was provided to the agents." (Obj., Doc. 169 at 8.)

Magistrate Judge Larkins found that Christolin's statement, "No, I am willing to listen" was not an unequivocal invocation of his right to remain silent that would trigger law enforcement officers' duty to cease questioning under *United States v. Ochoa*, 941 F.3d 941 1074, 1098 (11th Cir. 2019), *cert denied*, 140 S.Ct. 2553 (2020) (explaining that, if a person undergoing custodial interrogation states unequivocally "that he wishes to remain silent[,]the questioning must end") (quoting *United States v. Acosta*, 363, F.3d 1151 (11th Cir. 2004). (*See* R&R, Doc. 165 at 15) ("Since Mr. Christolin's response was not an unequivocal invocation of his right to remain silent, the agents were not obligated to stop the interview; and thus, it cannot be said that the agents' mere failure to stop the interview was sufficiently coercive to render the waiver invalid.").

---

[2] S/A Philippe primarily handled the *Miranda* portion of the interview though he was not a case agent on the case itself.  S/A Philippe spoke Haitian Creole during the interview and sometimes English with Mr. Christolin during the course of the interview.

4

Under the relevant legal authority, the Government must prove by a preponderance of the evidence that the defendant waived his rights knowingly and voluntarily. *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005). An accused effectively waives his *Miranda* rights if he: (1) voluntarily relinquishes them as the product of a free and deliberate choice, rather than through intimidation, coercion or deception; and (2) makes his decision with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995). Thus, a waiver is effective where the totality of the circumstances reveal both an uncoerced choice and the requisite level of comprehension. *United States v. Ransfer*, 749 F.3d 914, 935 (11th Cir. 2014) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *see also United States v. Wright*, 300 F. App'x 627, 632 (11th Cir. Nov. 12, 2008) (citing *Barbour*, 70 F.3d at 585). A waiver of rights under *Miranda* may be explicit, or it may be implied by the defendant's actions and words. *See North Carolina v. Butler*, 441 U.S. 369, 373-76 (1979). A defendant need not understand all the consequences of the waiver. However, he must be advised of both his right to remain silent and that any statements he makes can be used against him in Court. *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

A waiver of *Miranda* rights can take many forms, from an express, signed waiver to an implied waiver of rights based on the actions and words of the person being questioned. "[L]anguage barriers may in some instances impair an

5

individual's ability to waive his [*Miranda*] rights in a knowing manner." *Boon San Chong*, 829 F.2d 1572, 1575 (11th Cir. 1987).

In *United States v. Youte*, the Eleventh Circuit held that the *Miranda* waiver given by Youte (a Haitian national whose first language is Haitian Creole but who also spoke some manner of English) was secured sufficiently in conformity with *Miranda* standards to pass muster, although the translation provided of the core *Miranda* rights warning was a somewhat rough and imperfect one. The *Youte* Court explained:

> [D]espite the inelegant translation by Agent Philippe, neither of these two requisite components of a *Miranda* warning was lacking. *Cf. United States v. Street*, 472 F.3d 1298, 1311–12 (11th Cir. 2006) (warnings were inadequate where neither how statements might be used nor whether counsel would be appointed were mentioned at all). A suspect's difficulties with English do not preclude the possibility of receiving adequate *Miranda* warnings, especially when he unequivocally states that he understands the rights of which he has been informed. *United States v. Boon San Chong*, 829 F.2d 1572, 1573–74 (11th Cir. 1987)

*United States v. Youte*, 769 F. App'x 685, 688 (11th Cir. 2019). Thus, in *Youte*, the Defendant unsuccessfully argued that the agent's poor translation of the *Miranda* warnings made the delivered warning inadequate to advise him about his rights and in particular his right to remain silent. *Id.* at 685.

Special Agent Philippe served as the interviewer and translator in both *Youte* and the instant case. Although the primary crux of the dispute as to waiver and voluntariness is recounted above, the Court here provides a wider lens context of the *Miranda* portion of the interview that S/A Philippe conducted. At

6

the interview, S/A Phillipe initially advised Mr. Christolin of his *Miranda* rights by saying, "OK.  Any statement you made can be used against you in Courts or any legal institution.  My - Creole is not very strong." (Interview Tr., Doc. 84-1-at 5.)  S/A Philippe then followed up by giving Christolin a Creole translation of his *Miranda* rights to read, saying, "So, please go ahead and read to make sure you understand." (*Id*. at 6.)  Mr. Christolin then responded (in Creole), "I don't fully understand this. So, you can, you can use any statement. . . " (*Id*. at 7.)  Philippe then asked one of his colleagues to give him an English version of the form and Christolin commented in Creole, "Well, if I don't understand it in Creole, I won't understand it even more in English." (*Id*.)  S/A Philippe then responded, "No, I will explain to you -- No, no, rights form in English." (*Id*.)  Philippe then proceeded to give his own rough English to Creole translation of the form's *Miranda* warning provisions, similar to what occurred in the *Youte* case, and stated: "OK.  I will explain to where, OK, uh, this just said, um, everything you tell us, um, we can use in Courts when we -- are in Courts or when we're in front of a judge." (*Id*. at 7.) After Christolin responded "OK," S/A Phillipe provided the form in both Creole and English and stated: "You have, you have the right to an attorney before you make any statements and before you answer any questions they may ask you when they are interviewing you." (*Id*.) Christolin interrupts, stating "inter—" and S/A Phillipe corrects: "—interrogating you. Do you understand?" Christolin responds affirmatively. (*Id*.)   S/A Phillipe then finally says that Christolin has a right to an attorney, and that if he cannot afford an

7

attorney, one will be provided. (*Id*. at 8.) Christolin then states that he understands for a final time. (*Id*.)

Directly after Christolin confirmed that he understood these rough translations and initialed the *Miranda* form as to the items S/A Philippe had just translated, S/A Philippe asked, as set forth earlier, "So are you willing to speak with us?" and Christolin responded, as outlined above, "No, I'm willing to listen!" Immediately thereafter, Philippe states, "No, I am asking if you want to speak with us. You will need to sign — if you're willing to speak with us ...." And at that juncture, Christolin says, "Yeah, OK."

This is a more troubling course of interrogation than occurred in *Youte*. Here, Mr. Christolin affirmatively asserted his intent not to speak — and only to listen to what the officers had to say. While Christolin initially indicated he did not want to speak with the agents, when S/A Philippe immediately responded by posing the question more fully as to whether Christolin would be willing to speak and sign the waiver form, Christolin then agreed. When Christolin agreed to sign the waiver form and proceed to the substantive interview, neither the audio recording nor the transcript reflect a threatening tonality or verbiage on the part of the officers.

In sum, the Court views what happened here as distinctly more concerning than the "inelegant translation" in *Youte*. But the Court cannot find on this record either that Defendant unequivocally communicated his refusal to agree to speak with the agents or to proceed with the interview under the governing legal

8

authority. Nor was there evidence that Christolin was subject to either serious coercive tactics or force such that his intention not to speak was overridden. For these reasons as the Court must agree with the Magistrate Judge's Report and Recommendation. Considering the totality of the circumstances and applicable law, the Court concludes Mr. Christolin made a voluntary, knowing, and intelligent waiver of his *Miranda* rights and that the Government has established that the waiver was voluntary.[3]

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 165), **OVERRULES** Mr. Christolin's objections (Doc. 169), and **DENIES** Mr. Christolin's motions to suppress his statement (Docs. 54, 84, 146).

**IT IS SO ORDERED** this 22nd day of December 2022.

**Honorable Amy Totenberg**
**United States District Judge**

---

[3] That said, the pattern of using rough translations relating to the complex matters addressed within the *Miranda* warnings given in *Youte* and the instant case — and the fallout from such — should clearly be addressed by the Government.